Reversed and Rendered and Opinion filed February 24, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00573-CV

___________________

 

Riverside Exports, Inc., Appellant

 

V.

 

B.R. Crane & Equipment, LLC,
Appellee



 



 

On
Appeal from the County Civil Court at Law No. 4

Harris County,
Texas



Trial Court Cause No. 956449

 



 

 

OPINION

            In
this breach-of-contract case, the nonresident defendant challenges the denial
of its special appearance.  Because the defendant lacked minimum contacts with
the state, we reverse and render judgment dismissing the case.  

I.  Background

            Riverside
Exports, Inc. is a New Jersey corporation that buys and sells heavy industrial machinery
and equipment.  It operates from a single office in New Jersey and  has no
affiliated or subsidiary entities.

            Texas
limited liability company B.R. Crane, LLC contacted Riverside to purchase a
crane advertised on Riverside’s website.  It paid a deposit of $43,000 and
agreed to pay the remaining $24,500 of the purchase price not later than
December 15, 2009.  Riverside did not complete the sale, and B.R. Crane sued
for breach of contract, fraud, and violations of the Texas Deceptive Trade
Practices-Consumer Protection Act.  As the basis for personal jurisdiction,
B.R. Crane pleaded that Riverside (a) conducted business in the State of Texas,
(b) advertised the crane for sale over the internet, (c) sent emails to B.R.
Crane in Harris County “for the purpose of consummating a transaction with
respect to the purchase” of the crane, (d) refunded B.R. Crane’s deposit by
electronically transferring the funds back to B.R. Crane’s bank account in
Harris County, and (e) made misrepresentations in Texas by sending B.R. Crane
emails misstating the reasons it refused to complete the sale.  

            Riverside
filed a special appearance supported by evidence that it has no office, bank
account, or property in Texas; no employees who are based in or visit Texas; and
no Texas customers other than B.R. Crane, who has made approximately four
purchases from Riverside.  Riverside further established that it makes no
arrangements for disassembling or transporting equipment, and its customers
take possession of their purchases wherever the equipment happens to be
located.  It has never bought or sold equipment located in Texas.  Finally, Riverside
does not direct advertising to Texas, although it has a website where potential
customers can view photographs, descriptions, and prices of equipment available
for sale.  Riverside’s physical and email addresses and its facsimile and
telephone numbers are displayed on the website, but the website is only
informational, and does not afford direct communication between Riverside and
any visitors to the website.  

            In response
to the special appearance, B.R. Crane offered an affidavit consisting almost
entirely of a verbatim recitation of the factual section of its original
petition.  After a non-evidentiary hearing, the trial court denied the special
appearance and Riverside brought this interlocutory appeal.  

II.  Governing Law

            A Texas court’s exercise of personal
jurisdiction over a nonresident satisfies state statutory and federal
due-process requirements if the nonresident has minimum contacts with Texas and
the exercise of personal jurisdiction over the nonresident does not offend traditional
notions of fair play and substantial justice.  See Helicopteros Nacionales
de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S. Ct. 1868, 1872, 80 L.
Ed. 2d 404 (1984).  The minimum-contacts requirement is satisfied when the
nonresident purposefully avails itself of the privilege of conducting
activities within the forum state, thus invoking the benefits and protections
of its laws.  Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569, 575
(Tex. 2007).  

            The “purposeful availment” inquiry has
three parts.  Id.  First, only the defendant’s contacts with the forum
are relevant, so the reviewing court does not consider the unilateral activity
of other persons or entities.  Id.  Second, the contacts on which
jurisdiction depends must be purposeful, rather than random, fortuitous, or
attenuated.  Id.  Third, “the ‘defendant must seek some benefit,
advantage or profit by “availing” itself of the jurisdiction.’”  Id.
(quoting Michiana Easy Livin’ Country, Inc. v. Holten, 168 S.W.3d 777, 785
(Tex. 2005)).

            A nonresident’s contacts with the forum
state may give rise to general or specific jurisdiction.  Id.  General
jurisdiction is established if the nonresident’s contacts with the forum state were
continuous and systematic within a reasonable number of years before suit was
filed.  PHC-Minden, L.P. v. Kimberly-Clark Corp., 235 S.W.3d 163, 168–71
(Tex. 2007).  Specific jurisdiction is established if the nonresident’s alleged
liability arises out of or is related to an activity conducted within the
forum.  Moki Mac, 221 S.W.3d at 575–76.  Liability arises out of or is
related to an activity within the state when there is a substantial connection
between the nonresident’s contacts with the state and the operative facts of
the litigation.  Id. at 576, 585.

            The
existence of personal jurisdiction is a question of law which we review de
novo.  Spir Star AG v. Kimich, 310 S.W.3d 868, 871 (Tex. 2010).  In our
review, we consider all of the jurisdictional evidence before the trial court,
and if it issued no findings of fact, we presume the trial court resolved all
factual disputes in favor of its ruling if such a finding is supported by the
record.  BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex.
2002).  

III.  Analysis

            In three issues, Riverside challenges the
trial court’s ruling on the grounds that (a) B.R. Crane failed to plead
sufficient facts to subject Riverside to personal jurisdiction in Texas,
(b) Riverside established that it lacks minimum contacts with Texas, and
(c) the trial court’s exercise of personal jurisdiction does not comport with
traditional notions of fair play and substantial justice.  Because this case
presents such a striking analogy to Michiana Easy Livin’ Country, Inc. v.
Holten, one of the leading Texas cases on minimum-contacts analysis, we
dispose of this case based on Riverside’s second issue without addressing the remaining
grounds.  See Tex. R. App. P.
47.1 (“The court of appeals must hand down a written opinion that is as brief
as practicable but that addresses every issue raised and necessary to final
disposition of the appeal.”); Peredo v. M. Holland Co., 310 S.W.3d 468,
476 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (when the minimum-contacts
requirement has not been met, it is unnecessary to address the second prong of
the due-process test).  After considering the pleadings and the evidence, we
conclude that the jurisdictional allegations do not individually or
collectively support the exercise of personal jurisdiction.  

A.        In
refunding B.R. Crane’s deposit, Riverside did not purposefully avail itself of
the privilege of conducting activities in Texas. 

            Both at trial and on appeal, B.R. Crane
has maintained that the most compelling factor supporting the exercise of
personal jurisdiction is Riverside’s refund of B.R. Crane’s deposit by
wire-transfer to a Texas bank.  But here, as in Michiana, the
defendant’s contact with Texas was dictated by the plaintiff’s unilateral
choice.  

            In Michiana, Texas resident Holten
decided to buy a recreational vehicle from Michiana, an outlet store in
Indiana.  Michiana, 168 S.W.3d at 781.  He telephoned the store in
Indiana to place his order and he paid for it in Indiana.  Id.  Michiana
then arranged for the vehicle to be shipped to Holten in Texas.  Id. at
788.  Holten was unhappy with the vehicle, and sued Michiana for DTPA
violations, fraud, breach of contract, and breach of warranty based on
misrepresentations Michiana allegedly made during Holten’s telephone call.

            The court held that these facts were
insufficient to establish that Michiana had purposefully availed itself of the
privilege of conducting activities within this state.  Id. at 787.  As
the court explained, “Under Holten’s theory, Michiana could be sued in any
state or country from which he chose to place his call and take delivery.  But
as the Supreme Court stated, ‘unilateral
activity . . . cannot satisfy the requirement of contact
with the forum State.’”  Id. at 787 (quoting World-Wide Volkswagen
Corp. v. Woodson, 444 U.S. 286, 298, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490
(1980)).

            As in Michiana, the plaintiff in
this case reached outside Texas to initiate a purchase from a nonresident
seller, then sued in a Texas court for DTPA violations, fraud, and breach of
contract.  Here, the defendant kept the product and sent the plaintiff’s money
back to Texas, whereas in Michiana, the defendant kept the plaintiff’s
money and sent the product to Texas.  But this is a distinction without a
difference.  In both instances, the Texas destination was the result of the
plaintiff’s unilateral choice.  Riverside’s contacts with Texas, like
Michiana’s, resulted from the mere fortuity that the customer happened to
reside here.  

            Citing
two cases from our sister courts, B.R. Crane argued in the trial court and in
its responsive brief that wiring money to a Texas bank is sufficient as a
matter of law to confer jurisdiction.  See Bissbort v. Wright Printing &
Publ’g Co., 801 S.W.2d 588 (Tex. App.—Fort Worth 1990, no writ) and Mercer
v. Angel Racing, No. 09-02-067-CV, 2002 WL 1478526 (Tex. App.—Beaumont July
11, 2002, pet. dism’d w.o.j.) (not designated for publication).  We disagree.  As
we previously have stated, “sending funds to Texas is not determinative.”  Alenia
Spazio, S.p.A. v. Reid, 130 S.W.3d 201, 213 (Tex. App.—Houston [14th Dist.]
2003, pet. denied); see also Shell Compania Argentina de Petroleo, S.A. v.
Reef Exploration, Inc., 84 S.W.3d 830, 839 (Tex. App.—Houston [1st Dist.]
2002, pet. denied) (same); Magnolia Gas Co. v. Knight Equip. & Mfg.
Corp., 994 S.W.2d 684, 691 (Tex. App.—San Antonio 1998, no pet.) (same), abrogated
on other grounds by BMC Software, 83 S.W.3d at 794 & n.1.  And given
that B.R. Crane chose its Texas domicile and chose to use a Texas bank, it is
hard to conceive how Riverside could refund the company’s money without some
contact with Texas.

            The cases
cited by B.R. Crane do not affect our analysis.  The Mercer case is
inconsistent with the precedent of this court while lacking any precedential
value of its own, and in Bissbort, factors other than a single
wire-transfer supported jurisdiction.  There, it was a nonresident company that
contacted a Texas resident about repairing a printing press in another state,
and the parts needing repair were shipped to Texas.  These contacts would be
sufficient to support specific jurisdiction under our own precedent.  See
Nogle & Black Aviation, Inc. v. Faveretto, 290 S.W.3d 277, 283 (Tex.
App.—Houston [14th Dist.] 2009, no pet.) (explaining that a nonresident who
reaches out to a Texas resident for services to be performed in part in Texas
may have sufficient contacts to support the exercise of specific jurisdiction). 
But no such contacts are present here.  

            In effect,
Riverside did no more than reverse B.R. Crane’s transfer of funds.  We conclude
that Riverside did not purposefully avail itself of the privilege of conducting
activities in this state by doing so.

B.        The
exercise of personal jurisdiction is not supported by Riverside’s maintenance
of an informational website.

            B.R. Crane additionally stated in its
pleadings that Riverside had advertised the crane on the internet.  When
determining whether specific jurisdiction may be based on a nonresident’s
website, we generally evaluate the site on a sliding scale.  Jackson v. Hoffman,
312 S.W.3d 146, 155–56 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing Zippo
Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1110, 1124 (W.D. Pa.
1997)).  Absent evidence that a business intends to serve the Texas market, a
website that is merely informational, presenting only “passive advertising,”
generally will not support the exercise of personal jurisdiction.  Id.

            Riverside produced uncontroverted
evidence that it uses its website merely to post contact information, together with
lists, photographs, descriptions, and prices of available equipment.  Potential
customers cannot make purchases or even communicate directly with Riverside
through the website.  By such undifferentiated advertising, which is accessible
nationally and even internationally, a business cannot be said to avail itself
of the privilege of conducting activity in a particular state.  See Weber v.
Jolly Hotels, 977 F. Supp. 327, 333–34 (D.N.J. 1997) (comparing internet
advertising to advertising in a national magazine and noting that internet
advertising “is not tantamount to directing activity at or to purposefully
availing oneself of a particular forum”).  And here, there is no evidence from
the website or otherwise that Riverside intended to serve the Texas market.  Cf.
Spir Star, 310 S.W.3d at 877–78 (defendant’s website listed Texas as the
site for one of its offices, indicating an intent or purpose to serve the Texas
market).   

            Because Riverside’s website is solely
informational, we conclude that it does not support the exercise of specific
jurisdiction.  See Jackson, 312 S.W.3d at 155.  

C.        Riverside
did not purposefully avail itself of the privilege of conducting activities in
Texas by communicating by email with B.R. Crane.

            B.R. Crane also alleged that Riverside
sent emails to it in Texas “for the purpose of consummating a transaction with
respect to the purchase,” and later, to misrepresent the reason it refused to
complete the sale.  The email exchange in this case appears analogous to the
telephone conversation in Michiana.  And as the court explained in that
case, 

[C]hanges in technology have made reliance on phone calls
obsolete as proof of purposeful availment.  While the ubiquity of “caller ID”
may allow nonresidents to know a caller’s telephone number, that number no
longer necessarily indicates anything about the caller’s location.  If
jurisdiction can be based on phone conversations “directed at” a forum, how
does a defendant avail itself of any jurisdiction when it can never know where
the other party has forwarded calls or traveled with a mobile phone?

Michiana, 168 S.W.3d at 791.  

            These words apply equally to email
communications.  Like telephone calls, emails do not necessarily indicate
anything to the recipient about the sender’s location.  The physical address
where one may send or retrieve an email is no more fixed to a particular
location than the address where one may send or receive a telephone call.  We
see no reasoned basis for distinguishing between the two means of
communication, particularly when many of the same devices can be used for
both.  Where, as here, a Texas resident initiates the purchase of equipment
outside Texas by contacting a company outside Texas that does not direct
marketing to Texas, it matters little whether the nonresident company answers
the inquiry by telephone or by email.  In neither event has the nonresident
purposefully availed itself of the privilege of conducting activities in the
state.  See Jackson, 312 S.W.3d at 155–56 (holding that nonresident
business did not purposefully avail itself of the privilege of conducting
activity in this state where its mail and email communications were made in
response to Texas resident’s inquiry).  This remains true regardless of whether
the defendant’s communications allegedly contained misrepresentations.  See
Michiana, 168 S.W.3d at 790–91.

D.        Riverside does not have a history of
continuous, systematic contact with Texas.

            Finally, the record does not support the
exercise of general jurisdiction, nor has B.R. Crane seriously contended
otherwise.  As previously discussed, Riverside does not market its equipment in
Texas, has no property or employees in Texas, has not bought or sold equipment located
in Texas, and has no Texas customers other than B.R. Crane.  Thus, the record
does not support an implied finding that Riverside has had continuous,
systematic contact with Texas for a reasonable number of years before this suit
was filed. 

IV.  Conclusion

            Because we
conclude that Riverside lacks minimum contacts to sustain a Texas court’s
exercise of personal jurisdiction over it, we sustain Riverside’s second
issue.  Without addressing Riverside’s remaining appellate issues, we reverse
and render judgment dismissing the case against it for want of jurisdiction.

 

 

                                                                                    

                                                                        /s/        Tracy
Christopher

                                                                                    Justice

 

 

 

Panel
consists of Justices Seymore, Boyce, and Christopher.